*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* C. L. J. MANDELKA, Minor.

UNPUBLISHED
March 12, 2019

No. 345364
Wayne Circuit Court
Family Division
LC No. 16-523346-NA

Before: O'BRIEN, P.J., and JANSEN and RONAYNE KRAUSE, JJ.

PER CURIAM.

Respondent appeals as of right the trial court's order terminating her parental rights to the minor child, CM, under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist), (g) (failure to provide care and custody), and (j) (reasonable likelihood that the child will be harmed if returned to parent). We affirm.

In September 2016, the Department of Health and Human Services (DHHS) petitioned the trial court to remove CM from respondent's care. The petition alleged that, at birth, CM tested positive for THC and exhibited symptoms of opiate withdrawal. The petition also alleged that respondent could not properly care for CM based on reports that, while respondent was caring for CM in the hospital, she appeared under the influence of drugs, fell asleep while holding him, and left him unattended. Also according to the petition, during a home assessment, respondent tested positive for marijuana, appeared under the influence, and appeared to be taking her prescription medication in excess of the recommended dose. Following a preliminary hearing, the trial court authorized the petition, and CM was placed in foster care. Respondent was ordered to engage in supervised parenting time, infant mental health (IMH) services, substance abuse counseling, weekly random drug testing, a psychological evaluation, a psychiatric evaluation, parenting classes, and the parent partner program. In December 2017, the DHHS filed a supplemental petition to terminate respondent's parental rights based on her noncompliance with her treatment plan, concerns about her drug use, and concerns about her emotional stability. Following a termination hearing, respondent's rights were terminated on June 22, 2018.

## I. REASONABLE EFFORTS TO REUNIFY

Respondent argues that the trial court erred in terminating her parental rights because reasonable efforts were not made to reunify her with CM. We disagree. This Court reviews for

clear error a trial court's finding that the petitioner engaged in reasonable efforts to reunify a child with his or her parent. *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). A finding is clearly erroneous if, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. *Id*.

" 'Reasonable efforts to reunify the child and family must be made in *all* cases' except those involving aggravated circumstances not present in this case." *Id*., quoting MCL 712A.19a(2). In general, "the petitioner is required to make reasonable efforts to rectify the conditions that caused the child's removal by adopting a service plan." *In re Fried*, 266 Mich App 535, 542; 702 NW2d 192 (2005). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.).

CM was removed from respondent's care in September 2016, and on October 31, 2016, the court ordered that respondent participate in supervised parenting time, IMH services, substance abuse counseling, weekly random drug testing, and a psychological evaluation. Respondent also signed and entered into a parent-agency treatment agreement. The DHHS referred respondent to parenting classes three times between November 9, 2016 and September 29, 2017. Respondent was provided supervised parenting time with CM twice every week. Respondent was referred for parent partners on three different occasions over the course of the proceedings. In an effort to help address respondent's mental health, she was referred for a psychological evaluation on November 9, 2016. She was also referred for a psychiatric evaluation in November 2016, February 2017, and August 2017, but she did not participate in the evaluations and was repeatedly terminated from the service. Respondent was referred for substance abuse counseling in November 2016 and June 2017. Respondent was also referred for IMH services, which she regularly attended. To assist respondent with housing, she was provided with housing lists and placed on the waiting list for Section 8. The DHHS attempted a home visit with respondent, but respondent cancelled the visit. Based on these efforts, we are not left with a definite and firm conviction that the trial court made a mistake by finding that reasonable efforts were made to reunify CM with respondent.

Respondent argues that the efforts here were not reasonable because the high turnover rate of case workers led to inconsistencies and a delay in services offered to respondent. Yet the trial court recognized and addressed this problem; due in part to the delay in providing certain services, the court gave respondent an additional quarter to become compliant with her treatment plan before ordering that the permanent custody petition be filed. These proceedings spanned approximately 22 months, and therefore respondent had ample opportunity to engage in the services that were offered to her. Respondent also argues that the efforts here were not reasonable because the DHHS was unable to assist respondent with transportation. Yet the DHHS was not required to provide respondent with every conceivable service; it was required to provide reasonable services. MCL 712A.18f(1) and (4). Based on the services provided, the trial court did not clearly err by finding the efforts reasonable.

## II. STATUTORY GROUNDS FOR TERMINATION

Respondent argues that the trial court erred in finding statutory grounds for termination. We disagree. In order to terminate parental rights, a trial court must find that a statutory ground

-2-

has been established by clear and convincing evidence. *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). The trial court's findings are reviewed for clear error. *Id*.

The trial court did not err by terminating respondent's parental rights to CM under MCL 712A.19b(3)(c)(*i*). A trial court may terminate parental rights under MCL 712A.19b(3)(c)(*i*) if 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds that "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age."

The dispositional order here was entered on November 1, 2016, and respondent's rights were terminated on June 21, 2018, so more than 182 passed between the issuance of the initial dispositional order and when respondent's rights were terminated.

CM was originally made a temporary court ward because, at birth, he tested positive for THC and exhibited withdrawal symptoms from Subutex, and respondent admitted to using marijuana and Subutex during her pregnancy. Other factors that led to adjudication were concerns that respondent could not properly care for CM due to her behavior in the hospital, which included appearing under the influence, falling asleep with CM on her chest, leaving CM unattended, and emotional and upset behaviors exhibited toward hospital staff.

At the time of termination, respondent's issue with substance abuse continued to exist. While the record supports that respondent attended substance abuse counseling, she did not benefit from that counseling because she continued to test positive for drugs. See *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012) (explaining that a respondent must not only participate in but benefit from the services provided). Between June 2017 and September 2017, respondent did not regularly submit to drug screens, and the one drug screen that she submitted to during that time tested positive for cocaine. At the time the petition to terminate was filed in December 2017, respondent missed 47 drug screens, and of the drug screens to which she submitted, she tested positive for marijuana several times, positive for buprenorphine twice, positive for benzodiazepines three times, and positive for cocaine twice. Between January 2018 and the June 21, 2018 termination hearing, respondent missed seven drug screens, and of the drug screens to which she submitted, she tested positive for cocaine four times, THC five times, and positive for prescription medications six times. At the time of the June 21, 2018 termination hearing, respondent most recently tested positive for cocaine on April 14, 2018. Thus, the record supports that respondent's substance abuse issue continued to exist. And in light of the 22 months since removal that respondent had to address her substance abuse and the lack of progress that she made in that time, the trial court did not clearly err in finding by clear and convincing evidence that there was no reasonable possibility that respondent would be able to adequately address her problem with substance abuse in a reasonable time considering CM's age.

Respondent argues that the missed drug screens are not evidence that she failed to comply with her treatment program because she missed some screens while she was in a rehabilitation facility and incarcerated, and she missed others due to lack of transportation. Respondent's argument is unpersuasive. Respondent's treatment program did not simply require her to drug screen, but required those screens to be negative. The purpose of the screens was not simply for respondent to demonstrate a level of responsibility by attending the screens, but to demonstrate that she was no longer abusing substances—one of the conditions that led to

adjudication. The most probative evidence that respondent continued to abuse substances was not her lack of drug screens but her positive screens throughout the duration of these proceedings. Regardless of her reasons for missing screens, respondent's positive drug screens throughout the proceedings support the trial court's finding that respondent continued to abuse substances at the time of termination.[1]

Likewise, the trial court's finding that termination was proper under MCL 712A.19b(3)(c)(*i*) was not clearly erroneous because the record supports that the other condition that led to adjudication—respondent's emotional instability that prevented her from properly caring for CM—also continued to exist at the time of termination. On March 1, 2018, during the first day of the termination hearing, it was reported that between June 2017 and September 2017, there were multiple parenting time visits at which respondent cried uncontrollably. In the five months leading up to the termination hearing, respondent's actions at her parenting time visits were erratic and unpredictable. The staff at those visits reported multiple instances when respondent became upset with staff, and even stated that she would no longer visit CM and that the staff could keep CM. Respondent's volatile behavior continued outside of parenting time visits and led to several arrests. In April 2017, she was arrested for assaulting CM's father and his 13-year-old daughter, and two days before the termination hearing, she was arrested for domestic violence against her then-roommate. Thus, the trial court did not clearly err by finding that respondent's emotional instability that led to CM's removal continued to exist at the time of the termination hearing.

And there was no reasonable expectation that respondent would be able to properly address her mental health—and become emotionally stable enough to parent CM—within a reasonable time. In the 22 months since CM was removed, respondent was offered numerous services to assist her in addressing her emotional instability, but she largely failed to participate in those services, and to the extent she did participate, she failed to sufficiently benefit. Therefore, the record supports that the conditions that originally led to the adjudication had not been rectified and there was no reasonable expectation that they would be rectified in a reasonable time, so the trial court did not clearly err in terminating respondent's parental rights under MCL 712A.19b(3)(c)(*i*).

Only a single statutory ground needs to be established to support termination of parental rights under MCL 712A.19b(3). *In re Martin*, 316 Mich App 73, 90; 896 NW2d 452 (2016). Therefore, we need not address the other statutory grounds found by the trial court.

III. BEST INTEREST

---

[1] Respondent also argues that the missed drug screens are not representative of her compliance because, while in rehabilitation, she submitted to drug screens, and attended substance abuse therapy and parenting classes. But this argument is unpersuasive because respondent refused to sign a release form for the DHHS, and therefore the DHHS could not confirm her participation in these programs while in rehabilitation. Even accepting that respondent participated in these programs, the evidence suggests that she did not benefit from her participation because she continued to test positive for drugs.

Respondent argues that the trial court erred in finding that it was in the best interest of CM to terminate her parental rights. We disagree. "Whether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re Moss*, 301 Mich App at 90. This Court reviews for clear error the trial court's ruling that termination is in the child's best interest. *In re Hudson*, 294 Mich App 261, 264; 817 NW2d 115 (2011).

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). "In deciding whether termination is in the child's best interests, the court may consider the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (internal citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014).

The trial court here did not clearly err when it found that it was in CM's best interest to terminate respondent's parental rights. Despite these proceedings spanning 22 months, the evidence suggested that, at the time of termination, respondent was no more capable of properly caring for CM than when the case began. CM was born testing positive for THC and suffering from Subutex withdrawals because of respondent's use of marijuana and Subutex while pregnant. Even though respondent's drug use while pregnant harmed CM, respondent continued to abuse drugs up until the termination hearing. Not only could respondent's continued drug use potentially cause additional harm to CM, but respondent's continued emotional instability could as well. During parenting time visits when respondent would cry uncontrollably, it would cause CM to cry, evidencing that respondent failed to appreciate the effect that her emotional outbursts had on CM. Indeed, for both respondent's drug use and her emotional outbursts, the common thread appears to be respondent's inability to appreciate CM's needs and put them before her own. Thus, the record supports the trial court's conclusion that respondent was unable to properly parent CM, and therefore CM's well-being could not be assured reasonably if left in respondent's care. See *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011) (explaining that termination is in a child's best interests if their safety and well-being cannot be reasonably assured in the respondent's care).

The record also supports that respondent was unable to provide CM with the permanency, stability, and finality that the child needed. Besides her emotional instability, respondent did not have suitable housing for the majority of these proceedings. At the start of the proceedings, respondent had suitable housing, but after that house burned down, respondent never regained suitable housing. Respondent continually asserted that she was in the process of having her house repaired, but there was no evidence that she would be able to do so, or to otherwise obtain suitable housing for CM in the near future. Indeed, when her rights were terminated, respondent was without any housing because she was not allowed at her previous housing after she was arrested for domestic violence against her then-roommate. As for finality, there is no question that respondent was not capable of parenting CM at the time of termination, and for the reasons explained earlier, there was no reason to believe that she would be able to parent CM in the near future. Thus, the only way to ensure that CM received the permanency, stability, and finality

that the child needed was to terminate respondent's parental rights. The trial court did not clearly err by finding that termination was in CM's best interests.

Respondent argues that termination was not in CM's best interests because she and CM are bonded. But respondent ignores that the caseworker testified that, while respondent was bonded to CM, CM did not appear bonded to respondent. And to any extent that there was a bond, that is but one factor to consider in the best-interests determination, and, in light of the other factor already discussed, the trial court did not clearly err by finding that termination was in CM's best interests. Respondent also argues that termination was not in CM's best interests because she had been making progress in her parenting skills by participating in IMH services and parenting classes. Yet, in making this argument, respondent ignores that she was substantially noncompliant with her case service plan, particularly in addressing her issues with substance abuse and emotional instability.

Respondent also argues that the termination of her rights was premature because CM remained a temporary court ward while the child-protective proceedings against CM's father were ongoing, and, therefore, respondent should have been given more time to progress with her treatment plan. Respondent's argument is without merit. Even though CM remained a temporary court ward, the evidence supported a finding that respondent's continued involvement with CM threatened his future well-being due to respondent's inability to abstain from drug use or display appropriate behavior and emotional stability. Thus, the trial court did not clearly err by finding that it was not in CM's best interests to give respondent more time, and that termination of respondent's parental rights was in CM's best interests.

Affirmed.

/s/ Colleen A. O'Brien
/s/ Kathleen Jansen
/s/ Amy Ronayne Krause